IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   13-cv-02539-WYD-MJW

KENNETH MURPHY,

   Plaintiff,

v.

THE CITY OF AURORA, a Colorado Municipal Corporation;
DANIEL OATES, in his individual capacity and in his official capacity as Chief of the Aurora Police Department,

   Defendants.

**ORDER**

   THIS MATTER is before the Court on the Defendants City of Aurora and Daniel Oates' motion for summary judgment (ECF No. 25).  Plaintiff Kenneth Murphy, a former Division Chief and current Commander for the Aurora, Colorado Police Department, brings one federal claim for retaliation in violation of the First Amendment against Daniel Oates, then Chief of the Aurora Police Department and the City of Aurora.  Murphy alleges that Chief Oates demoted him in retaliation for testimony Murphy gave at a disciplinary proceeding against a fellow Aurora police officer before the Aurora Civil Service Commission.  After carefully considering the pleadings, admissible evidence, and the controlling law, I find that the motion for summary judgment should be granted and the case dismissed in its entirety.

I.  BACKGROUND AND RELEVANT FACTS

Plaintiff Kenneth Murphy is a police officer who began his career with the Aurora Police Department ("APD") in 1982. Murphy has a long history of documented exceptional performance and has received numerous commendations during his tenure with the APD. For more than 22 years, Murphy has had no history of discipline or corrective action within the APD. In 2002, Murphy was promoted to the rank of Division Chief and held that position until June 2013. At all times relevant to this motion, Chief Oates, then APD Chief of Police, supervised Murphy.

Murphy's job duties as an APD Division Chief included "[i]nitiat[ing] and/or recommend[ing] formal or informal disciplinary action aimed at directing activity consistent with policy, recognizing the need for encouraging appropriate risk taking in the member's problem-solving approach and the potential for inadvertent mistakes. [This] [i]ncludes conducting pre-disciplinary hearings … and appeals." (Mot. Summ. J. at 3). Further, Division Chiefs are expected to "make sound decisions, demonstrate leadership, and provide credible testimony in judicial and quasi-judicial proceedings." (Mot. Summ. J. at 4). Related to APD internal affairs investigations, one of the two Division Chiefs will make the decision to sustain a charge of misconduct against an APD member. Then, the other Division Chief will review the file, discuss the case during the investigation phase, and recommend discipline to the Chief. Ultimately, the Chief determines what discipline to impose.

During his tenure with the APD, Murphy testified in approximately 6 disciplinary hearings before the Aurora Civil Service Commission or a disciplinary review board. According to the APD Directives Manual, "[o]fficers appearing in court on-duty will wear

the Department Duty Uniform." (Mot. Summ J., Ex. E at 5). However, if an officer appears in court or at an administrative hearing "on an action not directly related to the member's scope of employment," he is considered off-duty and "prohibited from wearing any department issued uniform." (Mot. Summ J., Ex. E at 1).

The events giving rise to this case surround the internal affairs investigation of APD Officer Paul Swanson. In or around the summer of 2011, Swanson, a Commander of the Metro Gang Task Force, was being investigated for allegations that: he was not working the required number of hours; he was accepting taxpayer funds for hours not worked; and that he was not adequately performing his job duties. Murphy and Swanson are friends and have known each other since 1986. Because of this friendship, Chief Oates decided that Murphy should not be involved in the deliberations and discussions related to the Swanson investigation or in determining potential discipline. While Murphy did not participate in any deliberations or discussions regarding the Swanson investigation, he was provided a copy of the Internal Affairs investigative file on Swanson, which he reviewed on or about July 25, 2012. Chief Oates never required Murphy to review the Swanson file. Upon the conclusion of the Swanson investigation, on November 2, 2012, Chief Oates issued a disciplinary order demoting Swanson to Patrol Officer. Swanson appealed to the Aurora Civil Service Commission ("Commission") to reverse the demotion.

The APD never ordered or required Murphy to speak about the Swanson investigation. However, on April 19, 2013, Swanson served Murphy with a subpoena to testify before the Commission as part of Swanson's demotion appeal hearing. Thus, on May 22-23, 2013, Murphy testified, in uniform, before the Commission. It is hotly

disputed as to whether Murphy was testifying as part of his official duties as an APD Division Chief or as a private citizen responding to a lawful subpoena. Murphy testified before the Commission that while he did not have all of the relevant information, it was his opinion that Swanson's job performance issues did not warrant a demotion. Murphy further testified that based on his experience in the APD Chief's Office for eleven and a half years, he disagreed with Chief Oates' decision and would not have recommended Swanson be demoted. The Commission nevertheless affirmed Swanson's demotion imposed by Chief Oates.

     Chief Oates became aware of Murphy's testimony at the Swanson hearing and was concerned with what Murphy had said before the Commission. Specifically, Oates heard that Murphy had testified that Swanson was wrongly demoted, and Oates was "baffled that Ken [Murphy] would conclude that Paul [Swanson] shouldn't have been demoted based on the facts in the case, and it troubled me. . . ." (Mot. Summ. J., Ex. C at 111). Oates believed Murphy demonstrated poor judgment, and that his testimony created a "public perception within the organization . . . that the chief and the division chief disagreed. . . . I think that can create problems within the organization, dissention, a lack of confidence in either the chief or the division chief or both, and that's not healthy for the organization." (Mot. Summ. J., Ex. C at 137). Oates then offered Murphy an opportunity to review all of the Swanson evidence and told Murphy that he "was confident that, once [Murphy] had all of the information [Oates] had," Murphy would then reach the same conclusion as Oates. (Mot. Summ. J., Ex. C at 140). Oates also wanted Murphy to issue an email to the entire APD organization explaining that once he reviewed all of the Swanson evidence, Murphy agreed with Oates' decision to

demote Swanson.  Murphy refused, and on June 8, 2013, Oates demoted Murphy from Division Chief to Commander.

Interestingly, then APD Deputy Chief Terrence Jones, testified in his deposition that while he disagreed with the ultimate discipline imposed on Swanson by Chief Oates, Jones disagreed with Oates "behind closed doors," and not in a public proceeding.  (Resp. Mot. Summ. J., Ex. 1 at 118-119).  Jones agreed there was a "general or informal rule" against disagreeing with Chief Oates in public.  (Resp. Mot. Summ. J., Ex. 1 at 1162-164).

Based on his demotion, on September 17, 2013, Murphy filed this civil action against the Defendants seeking damages under 42 U.S.C. § 1983 for a violation of the First Amendment to the United States Constitution for retaliation against him after he gave truthful, subpoenaed testimony at APD officer Paul Swanson's demotion appeal hearing before the Commission.

II.     STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Emp't Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, [the Court must] view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of*

*Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation marks and citation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

Defendant Oates argues that he is entitled to the protection of qualified immunity under the facts and law of this case. Qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When, as here, the "'defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established.'" *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)). Thus, "'[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The court has "the freedom to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (quoting *Pearson*, 555 U.S. at 236)).

In determining whether the plaintiff has met his burden of establishing a Constitutional violation that was clearly established, the court construes the facts in the light most favorable to the plaintiff as the nonmoving party. *Thomson*, 584 F.3d at 1312.

"A right is clearly established . . . 'when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quotation and internal quotation marks omitted). "A previous decision need not be 'materially factually similar or identical to the present case; instead, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quotation and internal quotation marks and alterations omitted). "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

III.  ANALYSIS

Public employees do not relinquish their First Amendment rights as a condition of employment, however, "the government's countervailing interest in controlling the operation of its workplaces" limits the otherwise broad protections of the First Amendment. *Lane v. Franks*, ___ U.S. ___, 134 S.Ct. 2369, 189 L.Ed. 2d 312 (2014) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). In the Tenth Circuit, the well-settled *Garcetti/Pickering* analysis governs First Amendment retaliation claims. *See Brammer-Hoelter v. Twin Peaks Charter Acad.* 492 F.3d 1192, 1202 (10th Cir. 2007). The test includes the following five elements: (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as an employer, in promoting the efficiency of the public service sufficiently outweigh the

plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009).

However, the Supreme Court recently clarified in *Lane* that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 134 S.Ct. at 2379. Similar to the facts present in this case, the *Lane* Court held that "[t]ruthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to his public employment or concerns information learned during that employment." *Id.* at 2378. "Sworn testimony in judicial proceedings is a quintessential example of speech as a citizen for a simple reason: Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth." *Id.* at 2379. The Court further explained that "speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." *Id.*

Although I find genuine issues of material fact exist as to whether Murphy's sworn testimony given at Swanson's demotion appeal hearing is protected under the First Amendment, the claim must nevertheless be dismissed on the basis of qualified immunity. Here, Chief Oates argues that he is entitled to qualified immunity on Murphy's retaliation claim. Under the circumstances presented here, I find it most appropriate to proceed to the second question regarding qualified immunity, which is

whether the right at issue was clearly established at the time of the violation. *See Pearson*, 555 U.S. at 239. As I previously noted, a plaintiff carries a heavy burden of showing both that "the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that 'every reasonable official would have understood that what he [was] doing' violated the law." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) (alteration in original) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011)).

Murphy unconvincingly points to a Colorado statute and Colorado case law in an attempt to show a violation of clearly established law. However, Murphy's claim for relief is based on a violation of federal law, not state law. In *Davis v. Scherer*, 468 U.S. 183, 193, 104 S.Ct. 3012 (1984), the Supreme Court rejected this same argument holding that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." Similarly, Plaintiff offers no authority that Colorado case law satisfies this prong of the qualified immunity analysis.

Guided by the Supreme Court's holding in *Lane*, I reject Plaintiff's arguments. While the *Lane* Court recognized that the First Amendment protects a public employee who provides truthful sworn testimony outside the scope of ordinary job responsibilities, it still concluded that the defendant at issue was entitled to qualified immunity on the retaliation claim. The *Lane* Court found that a government official could not have reasonably believed that he or she was prohibited from firing an employee "on account of testimony the employee gave, under oath and outside the scope of his ordinary responsibilities" because this law was not clearly established. *Lane*, 134 S.Ct. at 2381.

In other words, "[a]t the time of Lane's termination, Eleventh Circuit precedent did not provide clear notice that subpoenaed testimony concerning information acquired through public employment is speech of a citizen entitled to First Amendment protection." *Id.* at 2382-83 (acknowledging the direct conflict of precedents between the Circuits as to this issue). Here, the facts of this case are analogous to *Lane* in that both cases involve sworn, truthful testimony given by a public employee pursuant to a subpoena. By not directing me to a single Supreme Court case, Tenth Circuit case, or the clearly established weight of authority from other courts, I find that Murphy has not established that applicable precedent provided clear notice to Chief Oates that demoting Murphy in retaliation for his testimony at Swanson's demotion appeal hearing was unlawful. In fact, recent Supreme Court case law holds to the contrary.[1] Accordingly, I conclude that Chief Oates is entitled to qualified immunity on Murphy's First Amendment retaliation claim.

I now turn to the Defendant City of Aurora. Initially, I note that "[w]hen a finding of qualified immunity is predicated on the basis that the law is not clearly established," a suit against a municipality may proceed. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782-83 (10th Cir. 1993). However, "[a] municipality may not be held liable under [42 U.S.C.] § 1983 solely because its employees inflicted injury on the plaintiff." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton*, 997 F.2d at 782. It may only be held liable under § 1983 "for its own unconstitutional or illegal policies." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Thus, "a municipality is

---

[1] Had Murphy's demotion occurred following the Supreme Court's decision in *Lane v. Franks*, Murphy would have a much stronger argument that *Lane* provides clear notice that his truthful sworn testimony, compelled by subpoena, given at Swanson's demotion appeal hearing, is speech protected by the First Amendment.

liable only when the official policy [or unofficial custom] is the moving force behind the injury alleged." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (internal quotation marks omitted)). A plaintiff must therefore "identify 'a government's policy or custom' that caused the injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The plaintiff must then show "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* (citing *Brown*, 520 U.S. at 403, 117 S.Ct. 1382).

Accordingly, in order to establish municipal liability under § 1983, a plaintiff must prove (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the injury alleged; and (3) state of mind. *Schneider*, 717 F.3d at 769.

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson*, 627 F.3d at 788 (internal quotation marks and citations omitted).

Here, Murphy fails to put forth evidence to support a claim of municipal liability. Instead of identifying an official policy or custom within the APD that caused the alleged constitutional injury, Murphy focuses on Chief Oates'

-11-

personal motivation behind his decision to demote Murphy. There is no evidence that Oates was acting pursuant to an official policy or custom within the APD or that Murphy's demotion was the result of a pattern of conduct within the APD. In fact, prior to the demotion, Murphy had an exemplary record of job performance within the APD with no disciplinary history. Because Murphy failed to create a genuine issue of fact as to the elements of this claim, I grant summary judgment in favor of the City of Aurora.

IV. CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants City of Aurora and Daniel Oates' Motion for Summary Judgment (ECF No. 25) is **GRANTED**. It is

FURTHER ORDERED that this case is **DISMISSED**, and judgment shall enter in favor of the Defendants and against the Plaintiff. Accordingly, the final trial preparation conference set for September 9, 2015 and the jury trial set for September 28, 2015 are hereby **VACATED**. It is

FURTHER ORDERED that the Defendants are awarded their costs, to be taxed by the clerk of the court under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated: March 23, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge